Good morning, everyone. We have six arguments on today's calendar. Judge Rovner is part of the panel and has prepared for argument, but unfortunately is not able to join us. She will listen to the recordings of the arguments, participate in the panel's deliberations and resolution of each of the appeals, though. We'll begin with Appeal No. 2448, Amy Hadley v. City of South Bend, Miss Miller. Good morning. Good morning, and may it please the Court. Marie Miller for the appellant, Amy Hadley. So the first question here is whether Johnson controls, and it does not, because the rule of decision in Johnson was a broad, categorical, exclusionary rule for the takings clause that is incompatible with more recent Supreme Court decisions. The year after Johnson was decided, the Supreme Court in Arkansas, Gammon Fish, instructed that takings claims must be assessed, quote, not by resorting to blanket exclusionary rules, end quote, but by referencing the particular circumstances of each case. And since then, the Supreme Court two more times has vacated blanket exclusionary rules for the takings clause, and eight of the Court's nine takings cases have involved exercises of the police power outside of eminent domain condemnation proceedings. So Johnson's categorical rule can't survive these precedential developments, and the courts in this circuit must start afresh in applying traditional takings rules to the particular circumstances of each case. And this Court already did that in Conyers. There, the government argued for Johnson's rule, the district court quoted Johnson's rule and relied on it, a panel of this Court rejected that rule, and the Court declined rehearing en banc. Now, as Conyers demonstrates, rejecting the government's rule does not mean that the Court will find a compensable taking, but the Court must use the proper mode of analysis, and the district court here did not, because it felt constrained to adhere to Johnson's categorical rule. Ms. Miller, you wrote a very good brief, and you're summarizing it, which is helpful. Can I ask you a question, though, about kind of what's embedded in what you're saying? Of course. If you had to capture in one or two sentences the rule that you would like us to announce, what would those one or two sentences be? When, as here, officers on the government's authority intentionally destroy an innocent person's property while trying to apprehend a fugitive, that set of facts invokes the per se takings rule. And that is because the government's action has ousted the property owner of her rights to possess, use, and dispose of the property the government destroyed. Then the government can avoid the compensation requirement by establishing entitlement to a historically grounded exception. Here, the government has not done so. Okay, and would there be a carve-out in a no-knock stash house warrant situation? No, there would not be a carve-out for that. Now, the government points to a common law privilege to forcibly enter a home to execute a warrant. And the argument is that because Ms. Hadley had no right to exclude the officers from her property to execute the warrant, she had no other property rights that they could have deprived her of. Right, think outside of this case, though, for example, about a no-knock search warrant issued on a stash house. And a team shows up at 6 o'clock in the morning, as we see in many, many cases here. And the search begins with the front door being knocked down. Takings claim as to complete destruction of the front door, 100%. Well, I'd want to know a few more things. First, was the officer refused entry to the front door? Never asked, because it was a stash house, and they were authorized to just knock the door down. It's a no-knock warrant. There may not be a taking for the door itself. And why not? Because if the owner of the house was part of this stash inside, then the owner is culpable. They're not an innocent owner. And innocence does matter for takings analysis. It goes back to the whole animating purpose of the Fifth Amendment. The whole point is to level out an imbalance of benefits and burdens favoring the public as against the individual property owner. If the property owner imposes a burden on society by having this— So if we don't—so innocence in what sense? Ultimate innocence? Innocence in imposing a burden on society. So if the owner has imposed a burden on society, then the government can offset that burden without invoking the takings clause, without triggering the compensation requirement. So let me give you a different fact pattern. Suppose, for example, we have a child sex offense investigation that results in a search warrant authorizing computers and iPads and what have you. We see that all the time. And in the course of the execution of that search warrant, there's all kinds of damage to the property. Kitchen table's broken. Closet doors are smashed in, you know, et cetera, that way. How does this innocence factor fit into that kind of analysis? Well, if the owner of the property is the sex offender, then that person has already imposed that burden on society, and the damage is simply offsetting that burden. So you're asking us—so you're saying in this particular case, Ms. Hadley is truly, in every sense of the word, this is the wrong house. Precisely. Okay. But no takings claim in the situation where all they were after was laptop computers, and you have the closet and the kitchen table, and the cabinets are pulled off the wall, and, you know, bedroom furniture is destroyed? Oh, no, there could be. There could be if they go well beyond what they needed to do and what they were authorized to do. For takings on takings grounds? Yes, if they weren't authorized to do what they did. If they went well beyond what they were authorized to do, then there's no taking. There must be authorized action. Okay. Would your test draw a distinction between when action is necessary and when it's inevitable? When an action is necessary versus inevitable? If it's necessary to execute the warrant. Take the no-knock warrant. It's necessary to breach the door. It might be necessary to do additional damage to the house, but not necessarily inevitable, right? You can imagine a number of reasonable ways to execute the warrant after the door is breached. Where do you draw the line there in terms of when compensation is due? Well, I'm not sure that necessity is going to dictate the answer here. If the property was destroyed pursuant to a public purpose, then the takings clause is invoked. There could be exceptions that still apply when the damage was necessary. Now, if the damage was inevitable, I don't think there's going to be a taking there. The first rationale in YMCA teaches that, if there's inevitable destruction, and I believe Caltex also uses this reasoning. If the damage was inevitable, then it wasn't by the government. There's a causation. The causation is absent in that situation. But my friends point to the common law privilege to forcibly enter to execute the warrant, and they say that because Ms. Hadley had no right to exclude, she also had no property rights they could have taken away. But here, the government's action exceeded the common law privilege in three separate ways. First, the privilege was limited to door breaking, which is a term of art that has the same meaning as used in the crime of breaking and entering. And here, the officers didn't bust through the door to get inside or break the windows to climb through. They were inflicting damage to get someone to come out. Second, the privilege was limited by the knock and announce rule. Peace officers had to be effectively refused entry. Ms. Hadley and her son, who was home at the time, did not refuse the officer's entry. And third, the privilege to forcibly enter a third party's home to make an arrest was limited to situations where the arrestee was pursued to that house. And the arrestee here was not pursued to Ms. Hadley's house. What's the relationship, in your view, if any, between a Fourth Amendment analysis of the reasonableness of a search and a Fifth Amendment takings analysis? Is there any relationship between the two under the test you proposed? There is a relationship only for situations involving a deprivation of the right to exclude by itself. And that comes from Cedar Point. In Cedar Point, Cedar Point concerned only a right to exclude all by itself. But Cedar Point also has that language, and I'm looking right at it. The government searches that are consistent with the Fourth Amendment and state law cannot be said to take any property right from landowners. Exactly, and that's why the reasonableness of a search matters only for those situations. There does matter for situations where the right to exclude by itself has been included. Okay, so is there a fact pattern that exists in your mind where you would say, there is no Fourth Amendment violation here in any way, shape, or form with respect to anything that happened during the course of the search, but there is a Fifth Amendment takings claim? Oh, that's what we have here, yes. So usually if a property right other than simply the right to exclude has been deprived, then the Fourth Amendment is not going to insulate that activity. And the Fourth Amendment's work in the right to exclude context is simply establishing whether the right exists in the first place. You don't have a right to exclude an officer lawfully executing a warrant, but that says nothing about your rights to possess, use, and dispose of the property. The entire issue in Cedar Point. That seems odd to me, then. If we go back to our stash house example, that the police are authorized in executing the search of the stash house to knock down the front door, and the front door is 100% destroyed, as I expect is probably the case in a lot of these searches, that you might have a takings claim there where there's absolutely no Fourth Amendment violation. Indeed, it's authorized. I'm not sure that the door breaking is going to be covered because of the common law privilege to break the door. But apart from the door breaking, other damage isn't covered by the common law privilege, and the Fourth Amendment can't insulate it outside of the context of a situation. So they're searching for kilos of heroin. They get to the bedroom, and the closet's locked. They're knocking the closet door down. I can guarantee you. Oh, that's part of the common law door breaking privilege. You can break multiple doors to get inside where you need to get into. It's not just the outer door of a building. It's inner doors as well. So can you go back? So with all of these kind of qualifications in mind, what tests do you propose? Well, it's what I mentioned earlier. There's a lot of exceptions that you're recognizing in what you're saying. There are many exceptions. And that goes to show that our view is very measured and tied to the specific facts of the case. The Supreme Court has instructed that these takings cases are very fact-specific. By contrast, the government's position is that law enforcement activity can never give rise to a taking. They're dealing in absolutes here. We have some questions for them too. Don't worry. But there are exceptions. So law enforcement, destructive law enforcement activity might be outside of the takings clause because the destructive act wasn't intentional, the destructive act wasn't authorized, because the destruction was inevitable, or because the owner was culpable. These are all exceptions that could apply. They don't apply here, though. These may be exceptional circumstances. And we're here, again, on a 12b-6. We have no factual development. So how does your test apply to the statute? We'll stick with the stash house example. But say you tear down all the walls. Say there's a wiretap saying, yep, this is a stash house. They see drugs coming in, coming out. They have a source saying that there's drugs in there. But, you know, sometimes people get smart and remove drugs. So all the drugs are gone. They tear down all the walls. They find a bunch of hidden compartments. No contraband is found. Yeah, I don't think whether the contraband is found is going to play a part in the analysis. But I do think what matters is whether the owner of the house was part of this stash. Now, the government could far exceed, you know, what they should. And should you litigate that? Does it come after a criminal case is completed? How do you resolve that case with your test? Well, the owner will have to establish that they own the property. And then if a person is not innocent, that's something that the government can point to. I see I'm in my rebuttal time. I would like to reserve. Thank you. Okay, very well. Mr. Smith, good morning. May it please the Court. Joseph Smith for the City of South Bend, but I'm speaking for all the FLEs today. Damage caused by law enforcement in the course of their law enforcement duties has never been considered a taking under the Fifth Amendment. Plaintiff cannot cite a single case except a reverse district court decision that has ever held that damage caused by police officers in the course of their law enforcement duties is a taking that must be compensated for. And all of the case law that has addressed this question, other than the one reverse district court case, has been the contrary. Blake, Slabaw, Amerisource, Buchanan v. U.S., Johnson v. Manitowoc County, Lawmaster v. Ward, Leck v. Johnson, McKenna v. Portman, Zedrick v. Petrucelli, all of those cases address this issue, and all of them found there was no taking under the Fifth Amendment. Let me ask you a hypothetical, because the case that's presented to us is asking us to reconsider this much more broadly. Yes, in the context of this fact pattern. So let's suppose, for example, that here, I don't remember this guy's name, Johnson something, they were looking for a fugitive, right? That the use of the tear gas, the tear gas canisters that were shot through the window and the use of these hand grenades, unexpectedly started a fire, and Ms. Hadley's home burnt to the ground entirely. Now, everybody admits this is the wrong house, right? And Ms. Hadley is now out of a home. What then? That would be an issue for state tort law. If the police negligently started a fire that burned the house down, that would be an issue for state tort law, not a takings issue. I think even under plaintiff's tests, it was not intended that they would burn the house down. There may be an argument about whether it was foreseeable, but police departments use these kinds of things all the time. Any Fourth Amendment 1983 claim for money damages set aside qualified immunity? That would be an issue, yes. If the plaintiff who owns the house can always claim that the police acted unreasonably, that it was unreasonable for the police to use these tear gas grenades, flash bangs to break down a door, that option is always available. And we've had that framework for determining whether law enforcement action is lawful since the Constitution and the Bill of Rights were ratified. So if we have an authorized search of a home for income tax records in a tax fraud case and the search happens and the home is almost destroyed, that would be a 1983 action for money damages? That would be a Fourth Amendment reasonableness issue, not a Fifth Amendment takings issue, and possibly a state tort law issue. But it would not be a taking because the nature of the action was a search. And the Supreme Court tells us we have to look at the nature of the action. Whether property was destroyed as a result of that action may be relevant to damages if the action was unreasonable under the Fourth Amendment. And so your position is that, as I understand it, that we can't hypothesize any set of facts. So if we sent this question over to the law schools in town and said, sit around all day long and make up fact patterns, you can't come up with one where a search results in a taking. It's literally an empty set. It doesn't matter how deliberate, how egregious, how extreme. Nothing could be hypothesized. Because we look at it under the Fourth Amendment, not the Fifth Amendment. The nature of the action is a search. The amount of the damage doesn't matter for whether or not it was a taking. It matters for whether the search was reasonable. But a search doesn't become a taking because it does a lot of damage. It's just not a taking. That's what all the cases have said. Look at Zitterbe Petrocelli where the plaintiff had hundreds of thousands of oysters that were grown in violation of state regulations. They were all seized and destroyed, 100% loss of his stock. That was not a taking. It was a law enforcement action. What's the best Supreme Court precedent you can think of that rules this out categorically? I'm not asking for a categorical rule. I want to be clear about that. Because even if it's a police power action, the precedent has been clear that a police power action can also be a taking. Okay, if it's not categorical, give me the hypothetical that fits within the category that's allowed. I can give an example for law enforcement. Let's say the police came to Ms. Hadley's neighbor's house and said, there's a fugitive on the loose. We'd like to set up an office in your basement to look for him. And they do that without their permission. They basically set up an office in the neighbor's basement. That would be a taking because that would be using the neighbor's home as though it was an office for the police department. So that would be a police power action that would be considered a taking. Even though they're looking for a fugitive, they are using the neighbor's property as though it belonged to the government. I can give another example. If the police department was using the neighbor's field as extra parking because they didn't have enough parking, that would be a taking if they were doing it without the owner's permission. If the government needs more parking for the police department, it should condemn the neighbor's field and turn it into a parking lot, not just use it. But to me, those are examples of the police department not exercising police power. I think you are advocating for a categorical approach to say if the police department is out there exercising its police powers, search, arrest, none of that's a taking. Is that correct? With the example of using the neighbor's basement, I think that would be police power. That would be considered a search. I don't think there's any question about that. With or without consent? As I said, if the neighbor did not allow it, they took the basement for the use of an office to search for a fugitive. You'd hope the neighbor would say, where's the warrant? Just hypothetical. We're not asking the court to say that everything that the police do is out of bounds with the Fifth Amendment. You have to do what the Supreme Court says and look at the nature of what the police are doing. If the nature of what they're doing is a taking, then you have Fifth Amendment liability. In what case do you have that would say that? We have Baker. That's not binding. It's two justices highlighting an issue. But there's nothing in that to suggest to me that there's this bright line. It's pointing out an issue percolating in the circuit. The Supreme Court has been very consistent that there is a distinction under the Takings Clause between eminent domain and police power. When I say police power, I'm not using it in its broadest sense as anything the government might lawfully do. Police power has been used in the context of the Takings Clause to mean something that is not eminent domain. It's long been recognized that if a police power action steps over that line into eminent domain territory, then it is considered eminent domain and it is a compensable taking. The examples you give about neighbors and fields and basements and all that stuff, those are examples where you've taken the focus away from the searched premises, just by definition. And what you're saying is, though, it does seem to me, unless I'm mishearing you, that your view is that as to a searched premises, it's categorical. Now, bad facts can make bad law. We all know that. But if you had a fact pattern that said that child sex offender, when you're going after the laptops on this search warrant this afternoon, destroy that house. Don't make sure that that, tear it apart, do whatever you have to do. Just make sure that that house is destroyed after that search warrant. That would be a Fourth Amendment issue, not a Fifth Amendment issue, and possibly also state tort law. A search does not become a search just because it does, a taking just because it does a lot of damage. And one of the issues that I have with Plaintiff's proposed test is that it divorces the search itself from the results of the search, meaning the damage. If damage from a search is a taking, how can we say that the search itself is not a taking? So I think that would have to result in... So suppose we disagree with you. You heard what Ms. Miller offered as her test. Just for purposes of the question, assume we disagree. How would you formulate the test? I would simply reaffirm Johnson, Manitowoc County, possibly make clear that Johnson did not use police power in its broadest sense, but in the context of the takings clause, meaning that if it's not an action that results in a taking, then it's not compensable. That's what the Supreme Court said in Venice. That's what the Supreme Court said in Mugler. You're just saying just edit it, make clear it's categorical as to takings liability. Well, again, I disagree that we're talking about a categorical rule. We still have to look at the nature of the action. But all we're talking about is the execution of search warrants, aren't we? We are talking about the execution of search warrants, yes. So if the court wanted to limit its holding, it could limit it in that way. That damage incidental to a search is not a taking. You have to look at it as a fourth amendment. Full stop, no matter what, categorical, doesn't matter how bad the fact pattern is. It is a Fourth Amendment issue, not a Fifth Amendment issue. If the police acted unreasonably, then the property owner has a Fourth Amendment recovery. I think our proposed rule has some benefits that Plaintiff's proposed rule does not. Under our proposed rule, a homeowner who is not innocent still has the right to recover in the event of unreasonable police action. Our rule allows police officers to know before they do what they're trying to do whether or not they're going to violate the Constitution. Let's focus on Johnson for a second. My first step is does Johnson control? Johnson said that the Takings Clause doesn't apply when property is damaged as a result of the government's exercise of police power, but it based that on Venice, which was a car forfeiture case. You have it underpinning in forfeiture, and then as counsel said, we decided Conyers, that was confiscated property. How far does the rule in Johnson go, and does it control here? Johnson controls here just because other decisions of the Supreme Court have addressed police power actions that were actually takings doesn't mean that all police power actions are takings. I disagree somewhat with Plaintiff's description of the later Supreme Court cases as police power cases. Those were eminent domain cases. Cedar Point Nursery v. Hasid, Plaintiff describes that as a police powers case. That was taking of an interest, that's what the Supreme Court said. Hornby Department of Agriculture, Plaintiff describes that as a police powers case. That was a classic taking of the raising growers' produce. And then going back, U.S. v. Cosby, Plaintiff describes that as a police powers case as well. That was also taking an easement from a property order. So calling a case a police powers case doesn't make it so. You have to look at what the court was actually looking at in those cases, and those were classic takings, or the same thing as a classic taking. One thing you got going for you, Mr. Smith, is no circuit court in the United States that I can tell has ever held that anything in connection with the execution of a search warrant is a taking. Not in an unqualified way. Agreed, yes. And again, I don't know how we can separate the search itself from damage caused by the search. The damage is the damage from the search. So if the damage is a taking, then wouldn't the search itself have to be a taking as well? It's as much of an interference with the property owner's interest as the damage. Sometimes more so. Yeah, I mean, the hard question the justices are going to have to resolve at one day is the relationship between the amendments. That way, the Fourth Amendment analysis I don't think is all that difficult. Where we see searches all the time that exceed a standard of reasonableness, and then oftentimes we'll see a 1983 claim on the heels of it. That's not uncommon. Right. The law is pretty comfortable with it. And as we've said in the brief, I think there's a strong distinction between the Fifth Amendment takings clause and the Fourth Amendment. The Fifth Amendment talks about takings. The Fourth Amendment talks about search and seizures. So we should look at it from the viewpoint of searches and seizures. Okay. Anything else? Yes. I would like to address plaintiff's suggestion that there's no historical analogs. Well, we're kind of out of time. It's in your brief, right? Well, no. Why don't you give us 20 seconds on it? All right. I was going to bring up the Statute of 1275, which is in the brief, as a historical analog, as well as the apprehension of John Wilkes Booth, where the barn that he was hiding in was burned to the ground in order to flush him out, which was successful, although he was shot in the process. So the type of damage alleged in the complaint has always been possible. Thank you. We ask that you affirm. Okay. Mr. Smith, thanks to you. Ms. Miller. Thank you. I'd like to offer a path forward that I don't think we've addressed yet. Because the district court below relied on Johnson's categorical rule, at least as the starting point, this court doesn't actually need to decide whether applying traditional takings principles to these allegations does or doesn't result in a taking. It's enough and appropriate to simply vacate the judgment below and remand, because Johnson supplied an improper analytical framework, and allow the district court another go in applying the takings principles in the first instance. And that has the advantage of heeding the call by Justices Sotomayor and Justice Gorsuch recently in their statement concerning Baker, that the lower courts should take a close and careful look at this issue before the Supreme Court takes it up to resolve the circuit split. And if you're concerned about orderliness, and I suggest circulating the opinion under Rule 40E, I don't believe that's required here because the circuits are already split and the Conyers panel didn't circulate that opinion, even while rejecting Johnson's rule. But we are not opposed to circulation here. This is a prime candidate for the court to clean up its case law that's out of sync with modern Supreme Court precedent. Johnson supplied no analysis whatsoever in adopting the police powers rule. This court hasn't relied on it even once. It was rejected in Conyers, and it's been rejected and criticized in Baker and Slabaugh as inconsistent with tradition, history, and precedent. So if you do not agree with us here that compensation is required, then we ask that you at least vacate the judgment and remand for the district court to reevaluate the complaint unencumbered by Johnson. Thank you. Okay, very well. Ms. Miller, thanks to you and your colleagues, and Mr. Smith, thanks to you and your colleague. We'll take the appeal under advisement.